## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

### UNITED STATES OF AMERICA

v.                                        Case No. 8:10-CR-530-T-33AEP

### CHRISTOPHER SWITLYK

## AMENDED
## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Robert E. O'Neill, United States Attorney for the Middle District of Florida, and

the defendant, CHRISTOPHER SWITLYK, and the attorney for the defendant,

Jeffrey Brown, Esq., mutually agree as follows:

### A.    **Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Counts One, Five and

Six of the Indictment.  Count One charges the defendant with conspiring to

> 1) distribute and possess with intent to distribute quantities of
> controlled substances, primarily oxycodone, a Schedule II
> controlled substance, contrary to Title 21, United States Code,
> Section 841(a)(1);
>
> 2) dispense and distribute, and cause to be dispensed and
> distributed, quantities of controlled substances, primarily
> oxycodone, a Schedule II controlled substance, not for a legitimate
> medical purpose and not in the usual course of professional
> practice, contrary to Title 21, United States Code, Section
> 841(a)(1);
>
> 3) use, and cause to be used, a registration number that was
> issued to another person in the course of distributing and

Defendant's Initials _____                    AF Approval _____

dispensing controlled substances, primarily oxycodone, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 843(a)(2);

4) acquire and obtain possession, and cause the acquiring and obtaining of possession, of controlled substances, primarily oxycodone, a Schedule II Controlled Substance, by misrepresentation, fraud, forgery, deception or subterfuge, contrary to Title 21, United States Code, Section 843(a)(3); and

5) open, lease, rent, use and maintain, and cause to be opened, leased, rented, used, and maintained, certain places for the purpose of distributing and dispensing controlled substances, primarily oxycodone, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 856(a)(1),

All in violation of Title 21, United States Code, § 846.

Counts Five and Six charge the defendant with engaging in

monetary transactions, in and affecting interstate and foreign commerce, in

criminally derived property of a value greater than $10,000.00, such property

having been from a specified unlawful activity, namely, a conspiracy to traffic in

controlled substances in violation of Title 21, United States Code, Section 846, in

violation of Title 18 United States Code, Sections 1957 and 2.

2.    Minimum and Maximum Penalties

Count One is punishable by a term of imprisonment of up to 20

years, a fine of up to $1 million, a term of supervised release of at least 3  years,

and a special assessment of $100, said special assessment to be due on the

date of sentencing.  Counts Five and Six are punishable by a term of

imprisonment of up to 10 years, a fine of up to $250,000, a term of supervised

Defendant's Initials _____        2

release of not more than three years, and a special assessment of $100 per

count, said special assessment to be due on the date of sentencing.

3.     Elements of the Offense

        The defendant acknowledges understanding the nature and

elements of the offenses with which defendant has been charged and to which

defendant is pleading guilty.  The elements of Count One are:

> First:    That two or more persons in some way or manner
>            came to a mutual understanding to try to accomplish
>            a common and unlawful plan, as charged in the
>            Indictment.
>
> Second:   That the defendant, knowing the unlawful purpose of
>            the plan, willfully joined in it; and
>
> Third:    That the object of the unlawful plan was to That the
>            object of the unlawful plan was 1) distribute and
>            possess with intent to distribute, 2) to distribute or
>            dispense not for a legitimate medical purpose and not
>            in the usual course of professional practice, 3) to use
>            or cause to be used a registration number that was
>            issued to another person in the course of distributing
>            and dispensing, 4) to acquire and obtain by
>            misrepresentation, fraud, forgery, deception or
>            subterfuge, and 5) to use and cause to be used
>            certain places for the purpose of distributing and
>            dispensing, controlled substances, primarily
>            oxycodone, a Schedule III controlled substance, as
>            charged.

The elements of Counts Five and Six are:

> First:    the Defendant knowingly engaged or attempted to
>            engage in a monetary transaction;

Defendant's Initials _____        3

| Second: | the Defendant knew the transaction involved property or funds that were the proceeds of some criminal activity; |
|---|---|
| Third: | the property had a value of more than $10,000; |
| Fourth: | the property was in fact proceeds of the specified unlawful activity described in the indictment; and |
| Fifth: | the transaction took place in the United States. |

4.  Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two, Three and Four of the Indictment, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.  No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.  Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is

Defendant's Initials _____ 4

not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7. Safety Valve Provision

The United States will not oppose to the Court that it impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, pursuant to USSG §5C1.2, if the Court finds that the defendant meets the criteria set forth in 18 U.S.C. § 3553(f). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of

Defendant's Initials _____     6

sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _____    7

## 10. Cooperation - Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to

Defendant's Initials _____ 8

this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant its own admissions and statements and the information and books, papers,

Defendant's Initials _____    9

documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty plea to that count to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to the count to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 21, United States Code, Section 853, and Title 18, United States Code, Section 982(a)(1), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following:

(a)     $1,609,520.00 in U.S. currency, seized from Regions Bank on May 20, 2010;

(b)     $2,545.00 in U.S. currency, seized from Christopher Switlyk on May 20, 2010;

(c)     $7,960.00 in U.S. currency, seized from Thomas Curtiss on May 20, 2010;

Defendant's Initials _____     10

(d) $425,730.00 in U.S. currency, seized from VIP Pharmacy on May 20, 2010;

(e) $25,630.00 in U.S. currency, seized from Tampa Bay Wellness Center on May 20, 2010;

(f) Regions Bank cashier's check #5003014747, in the amount of $42,101.94, seized on May 21, 2010;

(g) 363 assorted money orders in the amount of $267,650.00, seized from VIP Pharmacy on May 20, 2010;

(h) 6 assorted money orders in the amount of $4,000.00, seized from Thomas Curtiss on May 20, 2010;

(i) Check #5808 from Infinity Abstract and Title, LLC, in the amount of $400,000.00, seized on June 3, 2010;

(j) One Lincoln MKX, Vehicle Identification Number 2LMDU68C77BJ08440, Florida Tag Number ACSG82, titled and registered in the name of Christopher Switlyk, seized on September 7, 2010; and

(k) the real property, including all appurtenances thereto, located at 2410 Victoria Gardens Lane, Tampa, Florida 33609, the legal description of which is as follows:

LOT 1, BLOCK 4, VICTORIA PARK SOHO TOWNHOMES, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 99, PAGE 49 OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA.

PARCEL ID #A232918720000004000010.

The defendant agrees to execute any further documents necessary

to allow the United States to negotiate the money orders and checks listed

Defendant's Initials _____        11

above. He also agrees that by entering this plea agreement he is withdrawing his claim to the administrative forfeiture commenced by the U.S. Drug Enforcement Administration of the approximately $14,418.91 seized from Pilot Bank account number 4127099 on or about April 25, 2012, and is consenting to the administrative forfeiture of those funds.

In addition, the defendant shall be subject to a forfeiture money judgment in the amount of $10,700,592.00, representing the amount of proceeds, or property derived from proceeds, or property involved in, the offenses to which the defendant is pleading guilty, for which the defendant shall be jointly and severally liable with his co-defendants in this case. The net proceeds from the forfeiture of the assets enumerated above shall be credited toward the satisfaction of this money judgment. The defendant hereby represents that he has no right, title, or interest in any other assets (e.g., cash, personal property, or real property) listed in the Indictment (Doc. 1) or Bill of Particulars (Doc. 67) in United States v. Fernandez, et al., Case No. 8:10-CR-530-T-33AEP.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

Defendant's Initials _____        12

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure

Defendant's Initials ___  13

of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above and/or in satisfaction of the forfeiture money judgment. The United States agrees to schedule the defendant's polygraph examination promptly upon the Court's acceptance of the plea agreement, and to complete its financial investigation of the defendant within two years. If the United States concludes that the defendant has not retained any proceeds of the charged drug conspiracy, it will extinguish the forfeiture money judgment.

Defendant's Initials ___C&___    14

This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## B.    **Standard Terms and Conditions**

### 1.    Special Assessment and Fine

On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

### 2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _____        15

## 3. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

Defendant's Initials _____ 16

### 4. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

### 5. Appeal of Sentence-Waiver

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that

Defendant's Initials  $\underline{\quad CJ \quad}$          17

the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    Filing of Agreement

This agreement shall be presented to the Court, in open court and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials ___ $\underline{\text{CÞ}}$    18

## 8. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind other than the concessions contained herein, and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel. The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any fact affecting defendant's sentence. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense to which

Defendant's Initials _____         19

defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel, defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offense to which defendant has pleaded and, if such offense is a felony, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    9.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt:

FACTS

From at least beginning in 2008 through November 3, 2010, Luis FERNANDEZ, JR., Luis FERNANDEZ, III, Marco BELTRAN, and Kimberly CURTISS conspired together and with others to operate and maintain pain management clinics, including TAMPA BAY WELLNESS CENTRE at 2137 W. Martin Luther King Blvd, and SUPERIOR INJURY CENTER, located at 1779 West Hillsborough Avenue, Tampa, FL 33603; and from at least beginning in 2009 through November 2010, Christopher SWITLYK (a pharmacist), CURTISS, and BELTRAN conspired together and with others to operate and maintain a

Defendant's Initials   <u>  CH  </u>    20

pharmacy, the VIP Pharmacy at 1947 W. Martin Luther King Blvd, (formerly the TNC Pharmacy, previously located at 7902 West Waters Avenue, Tampa, Florida), all for the purpose of causing the unlawful possession, distribution and dispensing controlled substances, primarily oxycodone.

During the time frame of the charged conspiracy, defendant CHRISTOPHER SWITLYK, was a pharmacist with an active license to practice issued by the State of Florida. Defendant SWITLYK owned and operated the TNC Pharmacy, doing business as VIP Pharmacy, at 1947 West Martin Luther King Boulevard, Tampa, Florida, and previously located at 7902 West Waters Avenue, Tampa, Florida. Defendant SWITLYK applied for and obtained the DEA registration for the TNC Pharmacy doing business as VIP Pharmacy, to dispense, administer and prescribe controlled substances in Schedules II through V.

Defendants LOUIS FERNANDEZ, JR., LOUIS FERNANDEZ, III, and MARCO BELTRAN were owners, operators, managers and employees of medical businesses, including but not limited to the Tampa Bay Wellness Centre at 2137 West Martin Luther King Boulevard, Tampa, Florida; and the Superior Injury Center, at 1779 West Hillsborough Avenue, Tampa, Florida, and previously located at 1943 West Martin Luther King Boulevard, Tampa, Florida. Defendants LOUIS FERNANDEZ, JR., LOUIS FERNANDEZ, III, were not medical professionals licensed in any capacity in the State of Florida. Defendant

Defendant's Initials _____   21

BELTRAN also was an employee and licensed pharmacy technician of the TNC Pharmacy, doing business as VIP Pharmacy, at 1947 West Martin Luther King Boulevard, Tampa, Florida, and previously located at 7902 West Waters Avenue, Tampa, Florida.

Defendant KIMBERLY CURTISS, was an employee of the TNC Pharmacy, doing business as VIP Pharmacy, at 1947 West Martin Luther King Boulevard, Tampa, Florida, and previously located at 7902 West Waters Avenue, Tampa, Florida, and was not a medical professional licensed in any capacity in the State of Florida.

The defendants illegally operated the clinics and pharmacy by causing the issuance of prescriptions for, and the dispensing of, controlled substances, primarily oxycodone, based on prescriptions that had not been issued for a legitimate medical purpose and not in the usual course of professional practice.

Defendants BELTRAN, FERNANDEZ, III, AND FERNANDEZ, JR., in operating the clinics, also allowed or caused many blank prescription pads from the clinics to be sold and/or used and forged with physician's names, signatures, and DEA registration numbers in order to illegally fill and dispense controlled substances out of pharmacies, including the TNC and VIP pharmacies.

Defendants BELTRAN, FERNANDEZ, III, AND FERNANDEZ, JR., in operating the clinics, also assisted patients in obtaining and using false and fraudulent documentation in order to justify the issuance of prescriptions for

Defendant's Initials _____ 22

controlled substances by physicians and non-physicians from the clinics that had

not been issued for a legitimate medical purpose and not in the usual course of

professional practice. The total amount of prescriptions for oxycodone issued

from the clinics that were forged or otherwise issued illegally were for far in

excess of 150,000 pills, in 15, 30, 60 and 80 milligram doses, primarily 30

milligram doses.

Defendants BELTRAN, CURTISS, and others, while employed at the TNC

and/or VIP Pharmacies, with the knowledge and concurrence of defendant

SWITLYK, illegally filled prescriptions for controlled substances, including

oxycodone, at the VIP Pharmacy without the supervision or presence of a

licensed pharmacist, knowing that said prescriptions were forged or otherwise

not issued for a legitimate medical purpose and not in the usual course of

professional practice.

Defendants BELTRAN and SWITLYK also caused and allowed many

bottles of Oxycodone to be distributed and sold out of the TNC and VIP

Pharmacies to individuals without any prescriptions whatsoever. They would

then produce or cause to be produced forged prescriptions and false pharmacy

profiles in order to appear that they had legitimately dispensed all the oxycodone

that was illegally distributed.

According to data compiled by the Drug Enforcement Administration, and

supported by records seized at the VIP Pharmacy during the execution of the

Defendant's Initials _____ 23

search warrant on May 20, 2010, from January to December 2009, the TNC Pharmacy (Registrant for VIP and former TNC Pharmacy) purchased from various wholesalers a total of **1,541,640** dosage units of oxycodone. Unknown to defendant SWITLYK, this compares to an average of 111,874 dosage units by Florida pharmacies and an average of 62,931 dosage units by pharmacies across the United States during the same time period.

From January 2010 through May 20, 2010, the TNC Pharmacy, d/b/a VIP Pharmacy, purchased a total of **1,241,400** dosage units of oxycodone. Unknown to defendant SWITLYK, this compares to an average of 48,322 dosage units by Florida pharmacies and an average of 15,663 dosage units by pharmacies across the United States during this same time period.

At the time the search warrant was executed at the VIP Pharmacy on May 20, 2010, there were 107,892 oxycodone tablets left in inventory.

Further, the defendants operated the TNC and VIP Pharmacies as a cash business. The oxycodone that the defendants distributed and sold out of the TNC and VIP Pharmacies to individuals without any prescriptions was paid for in cash. The defendants would then conduct financial transactions with the cash proceeds of their drug trafficking activities with the intent to conceal the source of the funds and evade the currency transaction reporting requirements. They would also engage in monetary transactions in excess of $10,000 with the drug proceeds. Specifically, on or about April 21, 2010, the defendant SWITLYK

Defendant's Initials _____ 24

purchased, with cash proceeds of his unlawful drug trafficking activity and knowing such cash to be proceeds of his drug trafficking activity, Regions Bank Cashier's Check #5003723063 in the amount of $36,000, payable to Infinity Abstract and Title, for the purchase of 4102 W. Swann Avenue, Tampa, Florida. This monetary transaction was in and affecting interstate and foreign commerce, as Regions Bank is a federally insured financial institution whose transactions affect interstate and foreign commerce. On or about April 21, 2010, the defendant BELTRAN purchased, with cash proceeds of his unlawful drug trafficking activity and knowing such cash to be proceeds of his drug trafficking activity, SunTrust Bank Official Check #5630799771 in the amount of $38,000, payable to Infinity Abstract and Title for the purchase of 4102 W. Swann Avenue, Tampa, Florida. This monetary transaction was in and affecting interstate and foreign commerce, as SunTrust Bank is a federally insured financial institution whose transactions affect interstate and foreign commerce.

Further, on or about April 26, 2010, the defendants SWITLYK and BELTRAN knowingly used cash proceeds of his drug trafficking activity to purchase a 2007 Lincoln MKX, VIN #2LMDU68C77BJ08440, from the Cyber Car Store in Tampa, Florida. Specifically, the defendants SWITLYK and BELTRAN structured in an attempt to evade the currency reporting requirements (that is, split cash deposits into amounts under $10,000). The defendants SWITLYK and BELTRAN then caused the transferred $20,650, via SunTrust Cashier's

Defendant's Initials _____ 25

Check #5630846562 from the Macron Technologies account, to the Cyber Car Store for the purchase of the Lincoln vehicle. This monetary transaction was in and affecting interstate and foreign commerce, as SunTrust Bank is a federally insured financial institution whose transactions affect interstate and foreign commerce.

Further, the defendant and the United States agree that the proceeds, or property derived from proceeds obtained directly or indirectly from, or property involved in, the offenses to which the defendant is pleading guilty, including but not limited to the items listed for forfeiture above (Section A.11) is at least $10,700,592.00. Additionally, because the TNC and VIP Pharmacies were used to commit and facilitate the commission of such offenses, any property of the business, including at least $10,700,592.00 obtained from the sale of oxycodone, is subject to forfeiture. Accordingly, the parties agree that for forfeiture purposes, the defendant shall be jointly and severally liable with his co-defendants in this case for a forfeiture money judgment in the amount of $10,700,592.00.

10. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials ___CL___     26

11. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by or has been read to the defendant and that defendant fully understands its terms.

DATED this _3rd_ day of _September_, 2012.

ROBERT E. O'NEILL
United States Attorney

CHRISTOPHER SWITLYK
Defendant

By: KATHY J.M. PELUSO
Assistant United States Attorney

JEFFREY BROWN, ESQ.
Attorney for Defendant

JOSEPHINE W. THOMAS
Assistant United States Attorney

JOSEPH K. RUDDY
Assistant United States Attorney
Chief, Narcotics